UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN STONE, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES, INC. a corporation; VEHICLE AGENCY, LLC, a limited liability company, and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No.: 3:18-cv-02028-GPC-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART VEHICLE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 33]** |

Plaintiff John Stone filed a First Amended Complaint ("FAC") against AT&T Services, Inc. ("AT&T") and Vehicle Agency, LLC's ("Vehicle") on November 8, 2018, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and for invasion of privacy. ECF No. 8. Before the Court is Vehicle's motion for summary judgment. ECF No. 33. AT&T has joined Vehicle's motion. ECF No. 35. Plaintiff filed an opposition on September 13, 2019. ECF No. 36. On September 30, 2019, Vehicle filed a reply. ECF No. 38. On November 15, 2019, the Court held oral argument and allowed Vehicle to file an expert witness report to supplement the factual record. Defendant filed the report on November 18, 2019 and Plaintiff filed a response

on December 12, 2019. ECF Nos. 44, 45.[1] Based on review of the factual record and oral argument from both parties, the Court hereby **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.

## BACKGROUND

According to the FAC, Plaintiff is a resident of San Diego County, California. FAC ¶ 2. Vehicle is a mobile marketing technology company, which does business in San Diego. *Id.* ¶ 4; ECF No. 33-1 at 6. Vehicle sends Multimedia Messaging Service ("MMS") messages on behalf of clients, including AT&T. *Id.* at 6. MMS messages contain multimedia content (e.g., videos, images, and audio files). Meanwhile, Short Message Service ("SMS") messages consist of text. ECF No. 38 at 2.

Plaintiff alleges that Vehicle and AT&T (collectively, "Defendants") violated the TCPA by sending automated text messages, via an automated dialing system, to Plaintiff's circa-2007 Motorola RAZR cell phone. FAC ¶¶ 1, 7, 13. In the FAC, Plaintiff describes these messages as "service reminders for internet service" provided by the Defendants. *Id.* ¶ 8. Plaintiff alleges that he "requested that the automated messages stop," but Defendants did not honor Plaintiff's request and sent him messages "multiple times a day, seven days a week." *Id.* ¶¶ 9-11. Defendants deny that they sent more than a single MMS message sent on March 2, 2017.

In 2017, AT&T contracted Vehicle to provide MMS messages as part of its "AT&T Appointment Reminder campaign" in order to remind AT&T customers of upcoming AT&T service appointments. ECF No. 38-1 (Defendant Vehicle Agency's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, "Reply SOF") ¶ 2. Generally, AT&T and Vehicle followed a five-step protocol in conducting a campaign. First, an AT&T customer provided AT&T with their preferred cell phone number for contact and consented to be contacted by AT&T at the designated

---

[1] Vehicle filed supplemental excerpts from Plaintiff's deposition of Vehicle's expert witness on December 18, 2019. ECF No. 46.

number. *Id.* ¶ 4. AT&T then sent Vehicle an application programming interface ("API") request. *Id.* ¶ 5. Vehicle subsequently prepared an MMS message, which included the name and photograph of the AT&T technician that would visit the customer's house for the service appointment. *Id.* ¶ 6. Vehicle sent the MMS package to OpenMarket, a messaging aggregator service, which then routed the MMS message to the customer's cellular carrier. *Id.* ¶ 7. The cellular carrier then sent the MMS message to the customer's phone number. *Id* ¶ 8.

At all times, Plaintiff has resided with Li Ting Kuang ("Kuang"), in San Diego, California. ECF No. 36-2 (Declaration of John Stone, "Plaintiff Decl.") ¶ 3. In February 2017, Kuang was an AT&T Digital Subscriber Line ("DSL") internet customer. Reply SOF ¶ 9. While Plaintiff was attempting to use the internet service, he received an error message with an 800 number listed for AT&T. ECF No. 33-4 (June 14, 2019 Deposition of John Stone, "Plaintiff Dep.") at 10:22-11:4. Plaintiff called AT&T using the listed 800 number. *Id*. During the phone call, the AT&T representative scheduled a service appointment at Plaintiff's residence in order to upgrade the DSL service and informed Plaintiff that AT&T would send Plaintiff a text message with information about when the technician would be coming out to his home. Plaintiff Dep. at 20:5-8. At his deposition, Plaintiff testified that while he knew that AT&T would send a text message, he did not recall providing his phone number to the AT&T service representative during the service call. Plaintiff Dep. at 13:2-13, 14:1-5. An AT&T representative acknowledged that AT&T had not received written consent to send Plaintiff a text message and had no knowledge that Plaintiff provided oral consent. ECF No. 36-10 (Deposition of Shannon Grizzell, "Grizzell Dep.") at 41:18-23.

On March 2, 2017, AT&T sent Vehicle a single API request in order to prompt Vehicle to send a personalized MMS message to Plaintiff's RAZR phone. Reply SOF ¶ 7. After processing AT&T's request, Vehicle created the MMS to include the name and photograph of the AT&T technician who would perform the service appointment at Plaintiff's house and the technician's estimated time of arrival. Reply SOF ¶ 16. The

MMS message also included text similar to "Reply STOP to stop receiving these messages." *Id.* Vehicle then sent the MMS message to OpenMarket and did not receive any subsequent error messages indicating any problem with delivery of the MMS message. *Id.* ¶¶ 17, 19. The parties dispute whether Vehicle sent just one MMS message on March 2, 2017 to OpenMarket for delivery to Plaintiff's cell phone. Reply SOF ¶ 17; Stone Declaration ¶¶ 12-13, Exhibit 1; Golden Declaration, Ex. 14 ("Broom Rept.") at 5. However, the Plaintiff's declarations offer no support for this proposition. The Court finds there was one MMS sent on March 2, 2017. Plaintiff testified that he received an appointment reminder that a technician would arrive at a certain time; that the message was helpful and that he was not suing on the basis of this message. Plaintiff Dep. at 22-23.

Plaintiff declared that the first message he received was sent on March 2, 2017 and that the last message was sent on September 15, 2018. Stone Decl. ¶ 13. Between September 16, 2017 and September 15, 2018, Plaintiff saved 111 of the SMS messages on his RAZR phone. *Id.* ¶ 12. Neil Broom, Plaintiff's expert, performed a Cellebrite extraction on Plaintiff's RAZR cellular telephone and identified 111 SMS messages on the phone during this time period. ECF No. 36-18 ("Broom Rept.") at 5. All of the SMS messages list "73303" in the "From" line and list "AT&T Service Reminder" in the "Subject" line. Stone Decl., Ex. 1. "73303" is the short code listed in the U.S. Short Code Directory for Vehicle, and has reportedly been Vehicle's short code since May 5, 2011, the date of the short code activation. Broom Rept. at 4. Each message included different dates and times for "Received" and "Expires On." *Id*. In May 2017, Plaintiff contacted AT&T to tell them to stop sending the messages. Stone Decl. ¶ 15. Thereafter, Plaintiff spoke with at least five employees from AT&T's executive office and was told that they would look into the situation; Plaintiff was never told that AT&T denied sending the messages. *Id*. Eventually, Plaintiff was specifically informed that he should contact T-Mobile, his service provider. Reply SOF ¶ 36. The messages reportedly ended in September 2018, soon after Plaintiff filed his complaint in this case. Stone Decl. ¶ 18.

After the instant lawsuit was filed, Defendants hired Dr. Edwin Hernandez to provide an opinion as to whether Vehicle sent the alleged "service reminders" and to determine the cause and source of the "service reminders." Dr. Hernandez, among other things, examined Plaintiff's cell phone and determined that it had reached its "End of Life" in 2009-10. ECF No. 44-1 ("Hernandez Rept.") ¶ 27. He found that the RAZR had expired security certificates, a discrepancy between International Mobile Equipment Identity ("IMEI") values in the phone itself and T-Mobile's network, and a lack of reliable General Packet Radio Services ("GPRS") service. *Id.* ¶ 70. According to Dr. Hernandez, these factors contributed to the "misbehavior between [Plaintiff's] phone and T-Mobile's MMMS Relay server." *Id.* Ultimately, Dr. Hernandez opined that Vehicle sent a single MMS message with a reminder payload to a T-Mobile MMS Relay server, but T-Mobile's Relay failed to adapt the MMS message in a way that a RAZR phone would have been able to process and then failed to block the MMS message. *Id.* ¶ 69. Dr. Hernandez concludes that, as a result of these factors, T-Mobile's MMS Relay server remained in a state of perpetually attempting to send the single MMS message to Plaintiff's RAZR phone. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy

this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–24. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his or her pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Rule 56). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

The Defendants argue they are entitled to summary judgment because (1) Vehicle only sent one MMS message on March 2, 2017 that was never received, (2) AT&T had consent for the MMS message, and (3) an ATDS was not used to send the single MMS message. Plaintiff counters that Vehicle sent multiple messages for which consent was never given and that the record creates a genuine issue of fact as to whether an ATDS was used to send the messages.

The parties agree that AT&T sent Vehicle a single API request on March 2, 2017 that directed Vehicle to send a personalized MMS message to Plaintiff's cell phone, and that Vehicle in turn sent OpenMarket an MMS message based on AT&T's request. The parties agree that Plaintiff did not receive the March 2, 2017 message in an MMS format.

6

Reply SOF ¶ 18. Plaintiff, however, indicates that he received at least one text message appointment reminder in early March 2017. Plaintiff Dep. 22:13-23:15.[2] Defendants claim that Plaintiff consented to the delivery of the March 2, 2017 message; Plaintiff disputes this.

The parties also disagree as to the nature and origin of the 111 subsequent SMS messages that Plaintiff received and photographed.[3] Vehicle asserts that these messages were message waiting indicators generated by the T-Mobile's voice messaging platform. Plaintiff counters that a triable issue of fact exists as to whether Vehicle sent these messages. Plaintiff further assert that even under Vehicle's theory – i.e., that T-Mobile was solely responsible for the 111 subsequent SMS messages – Vehicle should still be held responsible since it acted as the "but for" cause of these messages. ECF No. 45 at 3.

**I.    Applicable Law**

The TCPA was enacted to " 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.' " *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir.2009) (quoting S. Rep. No. 102-178, at 1 (1991)). In particular, the TCPA makes it illegal:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> ...

---

[2] The T-Mobile cell phone records submitted by Vehicle do not show any records for March 2, 2017, but only provide the history of calls and messages for Plaintiff's cell phone number for the period between April 8, 2017 and December 31, 2018. ECF No. 33-4 at 74-179.

[3] The Court notes that parties have presented conflicting numbers of SMS messages. Plaintiff's expert witness located 111 SMS messages. Broom Rept. at 5. Defendant's expert witness states that there were 113 messages in Plaintiff's RAZR phone. Hernandez Rept. ¶ 29. The Reply SOF states that Plaintiff produced photographs of 112 messages on his RAZR phone. Reply SOF ¶ 21. Since Plaintiff produced 111 photographs of SMS messages to the Court, Stone Decl, Ex. 1 (ECF No. 36-3), the Court will refer to 111 SMS messages.

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added).

The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Ninth Circuit has upheld the Federal Communications Commission ("FCC") interpretation that a text message is considered a "call" within the meaning of the TCPA. *Satterfield*, 569 F.3d at 954. The FCC has also held that Internet-to-phone text messaging technology is a type of autodialer under the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 FCC Rcd. 8017 (2015).

**A. Whether a Call Was Made to Plaintiff's RAZR Phone**

Here, Plaintiff claims that the Defendants sent an MMS message and hundreds of SMS messages to his RAZR cell phone from March 2, 2017 through September 2018. The Defendants deny sending any SMS messages and solely admit sending one MMS message that was processed on March 2, 2017 but never received by Plaintiff. While Plaintiff admits he did not receive the MMS message, he claims to have received hundreds of SMS messages beginning on March 2, 2017 through September 2018. He has further testified that this lawsuit is not based upon the March 2, 2017 message. Plaintiff Dep. at 23:5-11. The Court concludes that Plaintiff has failed to show that he

received the March 2, 2017 MMS message and therefore cannot establish TCPA liability for this message. As to the SMS messages, the Court concludes that there remains a genuine issue of material fact as to whether Defendants initiated those messages.

To be held directly liable under the TCPA, the defendant must be the one who initiates the unsolicited prerecorded telephone call. Communications Act of 1934 § 227(b)(1)(B), 47 U.S.C.A. § 227(b)(1)(B); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019); *Kauffman v. CallFire, Inc.*, 141 F.Supp.3d 1044, 1047–48 (S.D. Cal. 2015). To meet his burden of proof on the SMS messages, Plaintiff relies on photographs of 111 messages that he received and a Cellebrite extraction; both of which reveal that the messages were received on Plaintiff's phone with a subject line of "AT&T Service REMINDER" which came "From 73303." 73303 is the short code identification number listed in the U.S. Short Code Directory for Vehicle, and has been Vehicle's short code since May 5, 2011, the date of the short code activation. Broom Rept. at 4, ECF No. 36, Ex. 1. This evidence provides unrebutted proof that the SMS messages were "received" by Plaintiff's RAZR phone. "From 73303" also provides a measure of circumstantial proof that the messages were "initiated" by Vehicle. Plaintiff further relies on the failure by AT&T service representatives to deny that AT&T sent these messages and the fact that the messages ended after the lawsuit to support his claim.

Vehicle argues that this circumstantial proof fails to create a genuine issue of fact on the issue of "initiation." Vehicle points to the absence of AT&T business records which document a campaign to send reminder messages to Plaintiff's phone after March 2, 2017. Given the record keeping that attaches to processing a service reminder, it would be expected that business records would have shown that the service reminder campaign was continued through September 2018. Defendants key in on Plaintiff's T-Mobile account records for the period of April 8, 2017 through December 31, 2018 that reflect zero incoming messages from Vehicle's short code. ECF No. 33-4 at 74-179 ("T-Mobile Cell Phone Records"); Vehicle Dep. at 26:25-27:12. Given the need for a service carrier to accurately track calls and messages that are processed by a service carrier, it

stands to reason that the lack of records memorializing messages initiated by Vehicle would exclude Vehicle as the source of the post-March 2, 2017 messages.

Further, Defendants' expert witness offers an opinion that the message waiting indicators are actually message reminders generated internally by T-Mobile as a result of Plaintiff's RAZR telephone failing to open the March 2, 2017 MMS. Hernandez Rept. ¶¶ 69-70. In its motion for summary judgment, Vehicle asserts that "because [Plaintiff's] 'flip phone' could not download MMS messages, non-party T-Mobile, Plaintiff's cell phone carrier, sent Plaintiff 112 'reminder' messages." ECF 33-1 at 5.

Defendants also note that Plaintiff's T-Mobile phone records show that Plaintiff received hundreds of text messages from "129," which is a short code used by T-Mobile to send customer alerts "generated by the T-Mobile voice messaging platform." Reply SOF ¶ 33. Vehicle relies on the deposition testimony from a T-Mobile representative, who explained that when the Call Type is listed as "mSTerminatingSMSinMSC," the call duration is listed "60," and when the Calling Number is listed as "129," this indicates that this a voicemail notification, alerting the subscriber that they have a voicemail message. ECF No. 33-4 (Deposition of Megan Quigley, "Quigley Dep.") 23:1-24:16.

However, the Court notes that the time stamps for the SMS messages provided by Plaintiff do not align with the time stamps on the T-Mobile cell phone records, nor do the quantities of SMS messages received on a given day. For instance, Plaintiff has provided two screenshots of SMS messages received on March 9, 2018. Plaintiff Decl. Ex. 1 at 2. Each bears a time stamp of 12:19 pm and 12:37 pm. In the T-Mobile phone records, there is only one March 9, 2018 record of a Call Type "mSTerminatingSMSinMSC," with the time stamp 15:36:03. ECF 33-4 at 125.

Plaintiff offers an alternate theory of liability in the event that the Court finds that all of the SMS messages were caused by T-Mobile perpetually attempting to send the single MMS message directed to Plaintiff's RAZR phone. Plaintiff offers a "but for" theory which holds Defendants liable under the TCPA for the post-March 2, 2017 messages because they would not have been received "but for" the original unopened

message sent by the Defendants. However, the Ninth Circuit has instructed courts to apply a common-sense approach to TCPA liability. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Given the remedial purpose of the TCPA and the requirement that a defendant "initiate" the offending message in order to be held liable, there is nothing in the record that supports the conclusion that Defendants were aware that T-Mobile would continue to direct the unopened message to Plaintiff's decade old RAZR in perpetuity.

Ultimately, the question before the Court is whether the record as a whole could lead a rational trier of fact to find that Defendants initiated the SMS messages. If not, there is no "genuine issue for trial." In the process of arriving at a decision, the Court cannot engage in credibility determinations, weigh the evidence, or draw legitimate inferences from the facts. While it can be argued that the weight of the evidence is strongly in favor of the Defendants, it is not for the Court to engage in such fact finding and weighing. The Court cannot conclude that Defendants' evidence so clearly contradicts and negates the circumstantial evidence offered by Plaintiff that it would prevent a rational person from finding for Plaintiff.

In sum, the Court finds that Plaintiff has failed to create a genuine issue of material fact as to the initiation of the single MMS message but finds that there is a genuine issue of fact on the issue of initiation of the SMS messages and, accordingly, **GRANTS IN PART** and **DENIES IN PART** Vehicle's motion for summary judgment.

**B. Whether Plaintiff Consented to the SMS Messages**

Vehicle summarily argues that Plaintiff's consent to receive messages from AT&T serves as an affirmative defense and therefore entitles Defendants to summary judgment. However, Defendants have not offered proof that Plaintiff provided written or oral consent. Instead, they appear to suggest that Plaintiff gave permission for the MMS message by providing his cellular telephone number to the AT&T service representative who notified Plaintiff that he would receive a message indicating when the technician would come over. However, given that the Court has already found that Plaintiff has

failed to show that he received the MMS message, consent for the MMS message is moot. As to the SMS messages, it is Defendant's burden to show that Plaintiff separately consented to the SMS messages.

The TCPA delegated to the FCC the authority to "prescribe regulations to implement [its] requirements." 47 U.S.C. § 227(b)(2). The FCC has issued rules and regulations regarding the issue of "prior express consent," stating that "persons who knowingly release their phone numbers have in effect given their invitations or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992).

In relationships between consumers and businesses, providing one's phone number has generally been deemed to constitute implied consent to communications that are closely related to the purpose for which the number was provided. *See, e.g.*, A*derhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014), aff'd, No. 14-35208, 668 Fed.Appx. 795, 2016 WL 4709873 (9th Cir. Sept. 9, 2016).

Given that Defendants deny initiating any SMS messages, Defendants have not offered any proof of consent to these messages. To the extent that Defendants are bootstrapping any consent for the MMS messages to support a finding of consent for the SMS messages, they fail. For one, Plaintiff disputes Vehicle's assertion that he consented to the MMS message and denies Vehicle's assertion that Plaintiff either gave his phone number as the contact number during the course of his February 2017 phone call or at any point in time between 2006 and 2017 in conversations with AT&T representatives about service issues. Reply SOF ¶ 13. At his deposition, Plaintiff did not admit providing his telephone number to the AT&T service representative. Instead he testified, "As far as if I actually gave [the AT&T representative] my phone number, in all honesty, I don't remember." ECF 33-4 at 21:12-14.) Plaintiff repeated this in his declaration where he states: "At some point AT&T obtained my phone number. I do not

12

3:18-cv-02028-GPC-MSB

recall providing it to AT&T. I do not recall AT&T informing me to expect a text message." Stone Decl. ¶ 10. Second, even if consent had been provided for the March 2, 2017 message, there was no indication that Plaintiff was being asked for his phone number in order to send hundreds of SMS messages to his phone. As a result, any consent provided did not extend to the SMS messages.

Vehicle argues that Plaintiff's declaration regarding AT&T's method of obtaining Plaintiff's phone number violates the sham affidavit rule and should be stricken by the Court. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale*, 577 F.3d at 998. This sham affidavit rule prevents "a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yaeger v. Bowen,* 693 F.3d 1076 (9th Cir. 2012) (internal citations and quotation marks omitted).

Here, Plaintiff was asked about his February 2017 phone call with AT&T at his June 14, 2019 deposition. Plaintiff stated, "I may have directly given [AT&T] the [phone] number. I really don't remember." Plaintiff Dep. 14:4-5. In his affidavit, Plaintiff states, "At some point AT&T obtained my phone number. I do not know how they obtained my phone number. I do not recall providing it to AT&T. I do not recall AT&T informing me to expect a text message." Plaintiff's declaration is consistent with his deposition testimony. The Court rejects Vehicle's argument and holds that sham affidavit rule does not apply to strike Plaintiff's above-mentioned statements.

Based on the record, the Court finds that there is an issue of material fact as to the issue of consent for the SMS messages.

C. **Whether Defendants Used an ATDS to Call Plaintiff**

Defendants assert that Vehicle's single MMS was not sent using an ATDS. ECF No. 33-1 at 6. Meanwhile, in its response to Requests for Admission, Vehicle "admits that it used an ATDS when sending a single text message to Plaintiff, but denies that it

13

3:18-cv-02028-GPC-MSB

sent more than one text message to Plaintiff." ECF No. 36-7 at 5.  Thereafter, Vehicle provided amended discovery answers and denied using an ATDS.  Plaintiff relies on the expert report by Jeffrey A. Hansen to support Plaintiff's claim that Defendants used an ATDS in sending both the MMS and SMS messages.  For the reasons stated below, the Court finds there is a genuine issue of fact as to Defendants' use of an ATDS to send the SMS messages.

The FCC has defined an ATDS as one that "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 n. 5 (2012) (emphasis in original).  An ATDS includes a device that "stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019) (citing *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018).  An ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to "store numbers to be called" and "to dial such numbers automatically." *Duguid v. Facebook, Inc*., 926 F.3d 1146, 1151 (9th Cir. 2019).

The *Marks* court considered whether Textmunication, a web-based marketing platform, qualified as an ATDS.  *Marks*, 904 F.3d at 1048.  Textmunication was designed to send promotional text messages to a list of stored numbers.  *Id.*  An operator of Textmunication could manually enter a customer's phone number, or a customer could also provide their phone number by filling out a form on Textmunication's website.  *Id.*  Crunch Fitness used Textmunication to communicate with prospective and current customers by sending text messages through the Textmunication system.  *Id.*  Specifically, a Crunch employee would log into the Textmunication system, select the recipient phone numbers, generate the message content, and select the date and time for

the message to be sent. *Id.* The Textmunication system then automatically sent the text messages to the selected phone numbers. *Id.*

The *Marks* court reversed the district court's granting of summary judgment for Crunch and rejected Crunch's argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever, and found that it was appropriate to deny Crunch's summary judgment motion based on the evidence in the record which showed that Textmunication stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns. *Id.* at 1053. The Court concluded that the "statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a random or sequential number generator, but also includes devices with the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052 (internal citations omitted).

Here, Vehicle's system works in substantially the same way. In order to send the MMS message to OpenMarket, Vehicle uses Fiddleback, which is a program developed by Vehicle and housed in an Amazon Web Services cloud infrastructure. Ex 38-3 (Deposition of Jeff Gough, "Gough Dep.") at 50:14-21. Fiddleback is a message-delivery platform that processes requests, queues SMS and MMS messages to be sent, and sends SMS and MMS messages. Gough Dep. 29:15-18. AT&T's API request to Vehicle and Fiddleback's subsequent submission of the message to OpenMarket are both done without any human intervention. Gough Dep. 51:5-13. Plaintiff's expert Jeffrey A. Hansen describes Fiddleback at length as qualifying as an ATDS. ECF No 36-19 ("Hansen Rept.") ¶¶ 21-26.

Plaintiff argues that since there is no "human intervention" between AT&T's API request and Vehicle's transmission of the MMS message to OpenMarket, there is a triable issue of fact as to whether Vehicle used an ATDS. As to the SMS messages, Hansen concludes that Vehicle used the Fiddleback system to deliver not only MMS messages but also the SMS messages that were received by Plaintiff. Vehicle asserts that

Fiddleback creates individual personalized messages for each customer based on individualized requests received from clients and therefore does not dial individuals automatically. Given the similarities between Fiddleback and Textmunication, and Vehicle's prior admission that an ATDS was used to send the MMS message, the Court concludes that Plaintiff has created a genuine issue of material fact as to whether an ATDS was used to send the MMS messages.

## II. Invasion of Privacy

Plaintiff alleges one count of invasion of privacy against to all Defendants based on the "excessive amount of text messages" sent by Defendants. FAC ¶ 19. Vehicle counters that it is entitled to summary judgment since there are no disputed facts on this question because Plaintiff consented to receive the MMS message from AT&T, and to the extent that Plaintiff claims the 111 SMS messages constituted an invasion of privacy, Vehicle was not responsible for sending those 111 SMS messages.

In California, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Deteresa v. Am. Broad. Cos., Inc.,* 121 F.3d 460, 465 (9th Cir. 1997). "[I]n pleading the elements of a TCPA claim, a plaintiff pleads an invasion of privacy claim." *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 804 (9th Cir. 2017). Congress, in passing the TCPA, concluded that calls prohibited by the TCPA were an "implicit invasion of privacy." *Id.*

Here, the Court has already found based on the preceding analysis that while Plaintiff never received the single MMS message from AT&T, but there is a genuine issue of material fact as to whether Vehicle was responsible for sending the subsequent 111 SMS messages. Accordingly, the Court **GRANTS** Vehicle's motion for summary judgment on the invasion of privacy claim as to the single MMS message and **DENIES** the motion as to the remaining SMS messages.

## CONCLUSION

Based on the reasons outlined above, Defendants' motion for summary judgment is hereby **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Dated: January 13, 2020

Hon. Gonzalo P. Curiel
United States District Judge